Linda M. SCHLUSSLER and Eugene P. Schlussler,
Plaintiffs-Respondents,

v.

AMERICAN FAMILY MUTUAL INSURANCE
COMPANY, Defendant-Appellant.†

Court of Appeals

No. 89–2233. Oral argument May 24, 1990.—Decided July 3,
1990.

(Also reported in 460 N.W.2d 756.)

†Petition to review denied.

516

On behalf of the defendant-appellant, the cause was submitted on the briefs and oral argument of *Sverre O. Tinglum* of River Falls.

On behalf of the plaintiffs-respondents, the cause was submitted on the brief and oral argument of *Michael P. Wagner* of Menomonie.

Before Cane, P.J., LaRocque and Myse, JJ.

MYSE, J.  American Family Insurance Company appeals a judgment awarding damages based on bad faith, punitive damages, future medical expenses and actual attorney fees to Linda and Eugene Schlussler. This case arises from American Family's decision to ter-

minate medical payments for further chiropractic treatment of Linda Schlussler. American Family contends that the plaintiffs' failure to put into evidence Minnesota's No-Fault Automobile Insurance Act and the actual insurance contract renders the evidence insufficient to sustain the verdict, that the trial court abused its discretion by permitting, during trial, an amendment to the pleadings alleging bad faith by the insurer, that Minnesota law bars recovery because it does not permit a claim of bad faith for the termination of future medical payments under the no-fault statute, and that there is insufficient evidence to sustain the jury's finding of bad faith. American Family also claims that the trial court erred by awarding a lump sum for future medical payments, and by imposing actual attorney fees under sec. 814.025, Stats., based on the court's finding that American Family's defense was asserted in bad faith.

We conclude that there was sufficient evidence of the applicable policy provisions to support the verdict, that Wisconsin law permitting a bad faith claim applies to this cause of action, that American Family is precluded from claiming prejudice by the amendment, and that there is sufficient evidence to sustain the jury's finding that American Family was acting in bad faith when it terminated Linda's right to future payments for chiropractic care. We therefore affirm the award of compensatory and punitive damages resulting from American Family's bad faith conduct. We conclude, however, that the trial court erred by permitting a lump sum award of future medical expenses and by awarding actual attorney fees under sec. 814.025, Stats. Therefore, we reverse that portion of the judgment providing for actual attorney fees and a lump sum award for future medical expenses and remand to the trial court for a determination of the amount of unpaid medical bills, plus interest.

This case arose from a 1987 automobile accident that occurred in the state of Minnesota. Linda was a passenger in an automobile driven by her husband, Eugene, when their vehicle was rear-ended by a police car. At the time of the accident, the Schlusslers were insured by American Family, which had issued a liability insurance policy that did not provide for medical payments. However, under the Minnesota No-Fault Automobile Insurance Act, American Family became obligated, regardless of fault, to pay benefits to the occupants of its insured vehicle. One of the benefits to which the Schlusslers were entitled was the payment of medical expenses to treat injuries sustained in the accident. Linda incurred medical and chiropractic expenses totalling in excess of $5,500, which were paid by American Family. American Family then requested an independent chiropractic examination of Linda. Leo Bronston, D.C., conducted an examination and concluded that Linda's problems were related to obesity, poor posture, and a 1984 accident. He expressed the opinion that none of her symptoms was related to the 1987 accident and that there was no need for further chiropractic care for these injuries. American Family advised Linda that they would make no further payment for chiropractic care.

Linda and Eugene filed an action alleging a breach of the insurance contract obligation imposed upon American Family by the Minnesota No-Fault Automobile Insurance Act. Near the close of American Family's defense, the Schlusslers moved to amend their complaint to allege the tort of bad faith based upon American Family's failure to pay $552.60 of chiropractic expense Linda incurred. American Family objected to the proposed amendment, but the amendment was permitted by the trial court. The court inquired whether American Family

wished a continuance, to which it responded that it did not and requested that the trial proceed. The jury returned a verdict providing for $75,000 for future chiropractic expense, $10,000 for pain, suffering and disability attributable to the company's bad faith, and $50,000 in punitive damages. The court also awarded actual attorney fees in the amount of $9,468.75 and double costs in the amount of $1,876.36. The jury award of $75,000 for future chiropractic expense was later reduced by the trial court to $13,939.72, reflecting the statutory maximum benefit of $20,000, less amounts previously paid by American Family.

American Family first contends that there was insufficient evidence to support the judgment because the actual insurance contract was not put into evidence and Minnesota's no-fault statute was not proved during the trial. We review a claim of insufficient evidence with deference to the jury and will affirm the jury verdict if there is any evidence that would reasonably permit the jury to reach the determination that they did. *Ford Motor Co. v. Lyons,* 137 Wis. 2d 397, 442, 405 N.W.2d 354, 372 (Ct. App. 1987). While the actual insurance policy was not put into evidence, that portion of the policy establishing American Family's obligation to pay for medical expenses incurred as a result of the Minnesota accident was established through the testimony of Patricia Zitzelsberger, American Family's claims specialist. The existence of the policy was never a disputed fact, and other policy provisions were irrelevant to the issue being litigated. Proof of American Family's obligation to make the medical payments required by the Minnesota no-fault statute is sufficient to support the jury's verdict.

The provisions of Minnesota's no-fault statute were equally uncontested. While it was possible for the Schlusslers to prove the terms of the statute, the trial court is also empowered to take judicial notice of the terms of a foreign statute on its own motion. *See* sec. 902.02(2), Stats. The terms of the Minnesota statute were discussed and acknowledged by counsel and the court. The provisions of that statute, which were required to interpret the terms of the insurance contract between the parties, were determined as a matter of law by the trial court without counsel's dispute or objection. Nothing further is required to support the jury's verdict.

American Family contends that the trial court abused its discretion by permitting the plaintiffs to amend their complaint during trial, transforming an action to recover unpaid medical expenses into one that included an allegation of bad faith against the insurer. American Family contends that by permitting the amendment, the trial court placed it in a position of having to defend a bad faith claim with no notice and no opportunity to adequately prepare a defense. We conclude, however, that American Family has waived its right to assert this claim. Where a party rejects the opportunity to present new evidence or move for a continuance after a motion to amend the pleadings pursuant to sec. 809.02(2), Stats., that party is foreclosed from claiming prejudice. *Wheeler v. General Tire & Rubber Co.,* 142 Wis. 2d 798, 817, 419 N.W.2d 331, 338–39 (Ct. App. 1987). Here, when the trial court heard the motion to amend the complaint, it offered a continuance to American Family's attorney. Counsel, for whatever reasons, declined the opportunity to obtain a continuance to prepare a defense and specifically consented that the

trial proceed on the bad faith claim. This choice precludes a claim of prejudice.

American Family next argues that Minnesota's no-fault Act contains the exclusive remedy for the nonpayment of benefits required under the statute. Subdivision 1 of Minnesota statute sec. 65(b).54 (1988) provides: "Benefits are overdue if not paid within thirty days after the reparation obligor receives reasonable proof of the fact and amount of loss realized." Subdivision 2 of the same section states "[o]verdue payments shall bear simple interest at the rate of 15 percent per annum."

The Minnesota courts have construed the foregoing language as the exclusive remedy available in the event of nonpayment of basic economic benefits required under the no-fault Act. Even if an insurer's refusal to pay was intentional, malicious and in bad faith, the Minnesota Supreme Court has found that an action for bad faith is not available under the no-fault Act, and punitive damages cannot be awarded. *Haagenson v. National Farmers Union Prop. & Cas. Co.,* 277 N.W.2d 648, 652–53 (Minn. 1979). American Family argues that Wisconsin is obligated to apply the terms and provisions of the Minnesota statute as interpreted by the Minnesota courts and, accordingly, a bad faith claim for failure to pay the benefits required by the no-fault Act cannot be maintained.

Such an argument assumes that the terms of the no-fault Act control the insurance company's conduct in Wisconsin. The Minnesota statute required American Family to provide coverage in its policy for medical payments, regardless of fault. It was that policy, amended by American Family to conform to the requirements of the Minnesota statute when American Family elected to do business in Minnesota, that created the obligation to pay

Linda's medical expenses.[1] The trial court was not required to apply Minnesota law in this case, but was only required to apply the terms of an insurance contract incorporating by reference provisions of Minnesota law.

The policy in question was written in Wisconsin, the insured was a Wisconsin resident, medical care was extended in Wisconsin and payments under the insurance policy were to be made in Wisconsin. The breach of this obligation occurred in Wisconsin. We conclude that Wisconsin law in regard to bad faith controls the conduct of these parties because the cause of action arose in Wisconsin under a Wisconsin insurance contract.

Even were we to conclude that the traditional conflict of laws analysis is required to determine whether the law of Wisconsin or Minnesota applies, we would conclude that Wisconsin law is applicable. Choice of law considerations established by *Heath v. Zellmer,* 35 Wis. 2d 578, 596, 151 N.W.2d 664, 672 (1967), involve predictability of results, maintenance of interstate and international order, simplification of the judicial task, advancement of the forum's governmental interest and application of the better rule of law. These factors are evaluated in light of the quantity and quality of contacts each state has with the parties and with the transaction.

---

[1] American Family's insurance policy contained the following language:

> OUT OF STATE INSURANCE. This policy conforms to any motor vehicle insurance law to which an insured person becomes subject by using a car in any state. But, any broader coverage so afforded shall be reduced to the extent to other auto liability insurance applies. No person may, in any event, collect more than once for the same elements of loss.

*Wilcox v. Wilcox*, 26 Wis. 2d 617, 634, 133 N.W.2d 408, 417 (1965).

Each of the choice-influencing considerations listed in *Heath* point to Wisconsin law under the facts of this case. In particular, the application of Wisconsin law would advance this state's significant interest in governing bad faith conduct by an insurer toward a Wisconsin insured. Additionally, the availability of this tort cause of action to compensate for an insurer's bad faith failure to perform as promised under its policy is, in our view, the better rule of law.

Minnesota has only minimal contacts with this litigation as the site where the accident occurred. The insurance contract was written in Wisconsin, medical treatments were received in Wisconsin, payments for these medical expenses were made in Wisconsin to a Wisconsin resident and the breach of the obligation to make payment occurred in Wisconsin. *See American Std. Ins. Co. v. Cleveland*, 124 Wis. 2d 258, 267, 369 N.W.2d 168, 173 (Ct. App. 1985). Based upon Wisconsin's significant contacts with this litigation, we conclude that the appropriate choice of law is that of the forum state. Because under either analysis it is Wisconsin's bad faith law that controls the parties here, we reject the contention that Minnesota's interpretation of its no-fault statute prohibits the prosecution of a bad faith claim in this state.

American Family next argues that there is insufficient evidence to support the jury finding of bad faith. Once again, we review such a contention with deference to the jury verdict and will sustain the verdict as long as any reasonable jury could have reached the conclusion that American Family acted in bad faith by withholding the medical payments claimed by Linda. *See Ford Motor*

527

*Co.*, 137 Wis. 2d at 442, 405 N.W.2d at 372. American Family argues that because it withheld payments only after obtaining a chiropractic opinion that Linda's continuing symptoms were not related to the accident, it cannot be guilty of bad faith. Essentially, American Family argues that when it relies on a medical opinion, no matter how unreasonable, it is protected from any claim of bad faith. We do not agree.

There are two bases upon which the jury could have found American Family acted in bad faith when it withheld payment of the $552.60 for past chiropractic care. The jury could have concluded that Dr. Bronston's opinion that Linda's symptoms were unrelated to the Minnesota accident was patently unreasonable. Dr. Bronston acknowledged that Linda was suffering the symptoms described and that the symptoms were contemporaneous in time with the Minnesota accident, but still concluded that these symptoms were unrelated to the accident in question. He dictated a report containing this conclusion without the benefit of examining complete medical records, including the results of a thermographic evaluation and a lumbar computerized axial tomography scan previously performed on Linda by two other doctors.

The opinion was inconsistent with other medical experts who had opined that the symptoms identified by Dr. Bronston were related to the Minnesota accident. There was testimony at trial that all symptoms of the previous accident had remitted prior to the 1987 accident, while Linda's present symptoms were contemporaneous in time with the 1987 accident and had continued unremitted since this accident. These facts may, in the jury's view, make Dr. Bronston's opinion that these symptoms were unrelated to the Minnesota accident unreasonable on its face and not a basis upon which

American Family could reasonably withhold payment. We therefore conclude that there was sufficient evidence for the jury to decide that Dr. Bronston's opinion was, on its face, unreasonable and that it is no defense to the bad faith claim made against American Family that they relied on such an opinion.

Because of this finding we need not evaluate the sufficiency of the evidence to support a second theory that may have supported the jury's conclusion of bad faith. Linda contends that American Family attempted to terminate her benefits in accordance with a plan, and solicited Dr. Bronston's medical opinion solely for the purpose of supporting this predetermined course of action. Such a theory involves an examination of the correspondence taking place within American Family and the inferences that may be drawn from that correspondence. We need not evaluate the sufficiency of the evidence to support the claim of a preconceived plan to terminate benefits because we have already determined that the evidence was sufficient for the jury to conclude that American Family could not have reasonably relied on Dr. Bronston's opinion.

American Family also argues that there is insufficient evidence to support the jury's finding that Linda is entitled to $10,000 for pain, suffering and discomfort as a result of American Family's bad faith refusal to make payment of the medical expenses due. The evidence discloses that when American Family refused the payment of future medical expenses, Linda was required to reduce the number of chiropractic treatments that she had been receiving because she was financially unable to sustain the cost for such treatment herself. Because the treatments had successfully reduced the pain Linda was enduring as a result of these accidents, the deprivation of

such treatment increased her pain and suffering during the period of time American Family wrongfully withheld payment of medical expense. This is sufficient to justify the jury's award.

American Family next contends that the court erred by awarding a lump sum for future medical payments. American Family argues that the obligation to make payments is contained within the insurance policy's terms, which contractually require payment of medical benefits specified by Minnesota's no-fault Act. Under the terms of the statute, medical bills are to be paid up to the statutory limit as the expenses are incurred. Here, the court permitted Linda to obtain a lump sum of future medical benefits equal to the unpaid portion of medical benefits provided by the Act.

Linda's rights to medical benefits exist by virtue of her insurance contract adopting the no-fault Act's requirements for medical payment. Medical benefits do not arise as a result of a tort occurring in Wisconsin and are unrelated to the bad faith claim. We accordingly agree with American Family's contention that the court erred by providing a lump sum payment of benefits. Rather, we believe that the insurance policy reflecting the Minnesota statute controls American Family's obligation for the payment of medical benefits. That statute requires that American Family pay the expenses related to the accident as the expenses arise and that any delay in making payment shall bear interest at the rate of fifteen percent. Sec. 65B.54, Minnesota Stats. We accordingly remand this matter to the trial court for a determination of the amount of unpaid medical bills, plus interest, to which the Schlusslers are entitled.

American Family finally contends that the court erred by imposing actual attorney fees under sec. 814.025, Stats. This statute authorizes the award of attorney fees if a defense is continued in bad faith or is frivolous. The interpretation of a statute is a question of law, as is the application of a statute to a particular set of facts. *Rubi v. Paige,* 139 Wis. 2d 300, 407 N.W.2d 323 (Ct. App. 1987). The reviewing court decides the meaning of a statute independently of the trial court's conclusions. *In re Estate of Boyle v. Wickhem, Buell, Meier, Wickhem & Southworth, S.C.,* 134 Wis. 2d 214, 218, 397 N.W.2d 124, 126 (Ct. App. 1986). While the trial court specifically found that American Family had no reasonable basis to deny Linda's claim, an insurer is entitled to defend a claim of bad faith on the merits. Merely because American Family failed to defeat the bad faith claim does not mean that the defense itself was in bad faith or frivolous. We conclude that American Family was entitled as a matter of law to defend the bad faith claim made against it and that its defense is not, without more, frivolous within the meaning of sec. 814.025. We therefore conclude that the court erred by admitting actual attorney fees and double costs as provided in sec. 814.025.

. *By the Court.*—Judgment affirmed in part, reversed in part and cause remanded.