Paul D. MARSH and Cynthia J. Marsh, Plaintiffs-Respondents,†

v.

FARM BUREAU MUTUAL INSURANCE COMPANY, Defendant-Appellant.

Court of Appeals

*No. 92–2491. Oral argument July 26, 1993.—Decided August 31, 1993.*

(Also reported in 505 N.W.2d 162.)

†Petition to review denied.

44

45

On behalf of defendant-appellant, the cause was submitted on the briefs of *Douglas J. Klingberg* and *Christopher T. Starkey* of *Ruder, Ware & Michler, S.C.* of Wausau and *A. James Dickinson* of *Stringer & Rohleder, Ltd.* of St. Paul. The cause was orally argued by *Douglas J. Klingberg* and *Christopher T. Starkey.*

On behalf of plaintiffs-respondents, the cause was submitted on the briefs of *Terrence M. Gherty* and *Susan Schleif Gherty* of *Gherty & Gherty* of Hudson. The cause was orally argued by *Susan Schleif Gherty.*

Before Cane, P.J., LaRocque and Myse, JJ.

LaROCQUE, J. Farm Bureau Mutual Insurance Company appeals a judgment awarding Paul and Cynthia Marsh medical and hospital expenses, attorney's fees and costs, bad faith damages and punitive damages. Farm Bureau raises numerous arguments. However, because Wisconsin did not have personal jurisdiction over Farm Bureau, we address only that issue and reverse the judgment.

The facts are as follows: Minnesota resident Paul Marsh occupied a car that was being towed when it was struck by Marjorie Breuer. Breuer is a Wisconsin resident, and the accident occurred in Wisconsin. Marsh reported the accident to his insurer, Farm Bureau. The car that Marsh was occupying had just been purchased and was uninsured, but as the car was a replacement vehicle for an insured vehicle, Farm Bureau agreed to provide liability coverage but not collision coverage. Farm Bureau collected a premium for the new coverage.

49

Farm Bureau is an Iowa company licensed to do business in Iowa, Minnesota, South Dakota, Arizona, Missouri and Utah. Marsh's insurance policy is a Minnesota contract and was drafted pursuant to Minnesota law. Moreover, the contract was executed in Minnesota.

Marsh filed a pro se small claims action in Wisconsin against Breuer for the property damage to his vehicle, and Breuer and her insurer, Horace Mann Insurance Company, filed a counterclaim against Marsh for property damage to her car. Marsh claims that he telephoned his Farm Bureau agent concerning Breuer's counterclaim. Marsh was referred to Wisconsin attorney Terrence Gherty, who agreed to represent Marsh. Gherty added a personal injury claim.

Farm Bureau alleges that it did not become aware of Breuer's counterclaim until eight months after it was filed, when Horace Mann sent a letter informing Farm Bureau of the countersuit. After the counterclaim was brought to Farm Bureau's attention, it decided that it would not defend Marsh in the small claims action because Marsh had never brought the counterclaim to its attention and because Marsh already had obtained representation. Farm Bureau's position was succinctly expressed in an interoffice memorandum, which stated:

> In reviewing this matter with you and Paul Olson, it would appear that at this time we should let the matter be resolved by St. Croix County Circuit Court and if any judgement (sic) is entered against our insured, proceed with payment. I don't feel at this time we should hire the services of an attorney as our insured has never called our attention to the counter suit. What I'm saying is let the chips fall where they may and find out who pays what . . . .

The jury found that both Marsh and Breuer were negligent, but that Marsh's actions had not caused Breuer any property damage and that Breuer's actions had not caused any injuries to Marsh. The jury further found that Marsh would incur no future medical or hospital expenses. Consequently, Farm Bureau informed Marsh it would no longer provide personal injury protection (PIP) benefits to him.

The Marshes then filed an action in Wisconsin alleging that Farm Bureau had acted in bad faith by failing to defend Paul Marsh and by wrongfully denying PIP benefits. Farm Bureau moved to dismiss the complaint arguing that Wisconsin lacked personal jurisdiction over Farm Bureau. This motion was denied, and a petition for leave to appeal an interlocutory order was filed, which we denied. Farm Bureau then moved for summary judgment contending that Minnesota law controlled and that Minnesota law precluded bad faith or punitive damages based on a breach of an insurance contract. The trial court found that Wisconsin law controlled and granted the Marshes partial summary judgment, finding that Farm Bureau had failed to defend Paul Marsh.

At trial, the jury awarded the Marshes $20,235.70 in attorney's fees and costs because of Farm Bureau's failure to defend. The jury found that Farm Bureau breached its contract by failing to pay for a $91 chiropractor bill. The jury also found that Farm Bureau's action constituted bad faith, awarding the Marshes $60,000 as compensation, and that Farm Bureau's conduct was outrageous, awarding punitive damages of $550,000. Farm Bureau subsequently brought this appeal. Additional facts will be provided as needed throughout the opinion.

■

Personal jurisdiction is a question of law that we review de novo. *Brown v. LaChance*, 165 Wis. 2d 52, 65, 477 N.W.2d 296, 302 (Ct. App. 1991). The determination of whether Wisconsin courts have jurisdiction over a nonresident-defendant is a two-step process.[1] First, it must be determined whether a defendant's contacts with Wisconsin subject him to jurisdiction under Wisconsin's long-arm statute. *In re Liquidation of All-Star Ins.*, 110 Wis. 2d 72, 76, 327 N.W.2d 648, 650 (1983). If so, then the court must determine whether the exercise of jurisdiction under the statute comports with due process requirements. *Id.*

■

The long-arm statute is to be liberally construed in favor of exercising jurisdiction. *Lincoln v. Seawright*, 104 Wis. 2d 4, 9, 310 N.W.2d 596, 599 (1981). The trial court found personal jurisdiction under Wisconsin's long-arm statute, sec. 801.05(10), Stats., which provides:

> In any action which arises out of a promise made anywhere to the plaintiff or some 3rd party by the defendant to insure upon or against the happening of an event and in addition either:
> (a) The person insured was a resident of this state when the event out of which the cause of action is claimed to arise occurred; or

---

[1] The Marshes contend that a two-step analysis is not needed when personal jurisdiction is established under Wisconsin's long-arm statute. However, case law makes it abundantly clear that the long-arm statute creates merely a presumption of jurisdiction that can be overcome through due process analysis. *See, e.g., Brown*, 165 Wis. 2d at 67, 477 N.W.2d at 303.

(b) The event out of which the cause of action is claimed to arise occurred within this state, regardless of where the person insured resided.

The trial court found that Farm Bureau's tort of bad faith occurred in Wisconsin when it failed to defend, and therefore Wisconsin had personal jurisdiction even though Marsh resided in Minnesota.

Farm Bureau tacitly concedes that Wisconsin has personal jurisdiction under the long-arm statute, presumably because the cause of action, i.e., Farm Bureau's failure to defend, occurred in Wisconsin. Instead, Farm Bureau argues that Wisconsin's exercise of personal jurisdiction offends due process. Compliance with the long-arm statute is presumed to be compliance with due process requirements. *Brown*, 165 Wis. 2d at 67, 477 N.W.2d at 303. Thus, Farm Bureau has the burden of overcoming the presumption that Wisconsin's personal jurisdiction would not violate due process.

The due process clause permits a state court to exercise jurisdiction over a nonresident if there are "minimum contacts" between the defendant and the forum state and the exercise of jurisdiction does not violate traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *In re All-Star Ins.*, 110 Wis. 2d at 77, 327 N.W.2d at 651.

In order to establish minimum contacts, the defendant must purposefully avail himself of the privilege of conducting business in the forum state, thus invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). The defendant's activity vis-a-vis the forum state is the crucial ques-

tion; the unilateral activity of one seeking to claim a relationship with a defendant cannot satisfy the minimum contacts. *Id.; Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-75 (1985). The touchstone of the exercise of personal jurisdiction is reasonableness and fairness. *In re All-Star Ins.*, 110 Wis. 2d at 78, 327 N.W.2d at 651. The defendant's conduct and connection with the forum state must be such that he should reasonably anticipate being haled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

The Marshes argue that Farm Bureau has several contacts with Wisconsin. These include the new insurance policy Farm Bureau sold to Marsh to protect him from any liability resulting from the accident; Farm Bureau's refusal to assist Marsh in recovering property damage, thus forcing Marsh to recover his damages in Wisconsin and making a future lawsuit foreseeable; Farm Bureau's seeking subrogation in Wisconsin; Farm Bureau's failure to defend Marsh on the counterclaim against him in Wisconsin; and Farm Bureau's threats and harassment of Marsh to get him to stipulate to Farm Bureau's subrogation interest. None of these contacts permit Wisconsin to exercise personal jurisdiction.

█

First, the insurance contract between Farm Bureau and Marsh is not a contact with the state of Wisconsin. In *In re All-Star Ins.*, the Wisconsin Supreme Court found a contract between a Wisconsin insurer and two nonresident insurance agencies that did no business in Wisconsin was a contact sufficient to support personal jurisdiction. The court's reasoning relied heavily on the fact that the Wisconsin insurer was in liquidation and a special jurisdictional statute

had been enacted that evinced the state's interest in providing an efficient and inexpensive forum for liquidation of Wisconsin insurers for the benefit of Wisconsin residents. *Id.* at 83, 327 N.W.2d at 653-54. This case does not involve any special jurisdictional statutes, any Wisconsin parties, or the need to protect the interests of any Wisconsin residents.

We are persuaded by the Arizona Supreme Court in *Batton v. Tennessee Farmers Mut. Ins. Co.*, 736 P.2d 2 (Ariz. 1987), where a nonresident insured was involved in an accident in Arizona, and his Arizona attorney applied for reimbursement of medical expenses from the insurer, who did no business in Arizona. When the reimbursement was denied and the policy canceled, the insured sued in Arizona for breach of contract and bad faith. The Arizona court concluded that the insurance company's agreement to defend and indemnify its insured in any state did not imply an agreement to be sued by its insured in any state. *Id.* at 6-7. While a contract to defend and indemnify in any state made a suit to defend in any state foreseeable, the court held that the contract did not evince purposeful availment of the benefits of Arizona. *Id.*

Similarly, this contract, written specifically to protect Marsh from liability for an accident in Wisconsin, was a contact between Farm Bureau and Marsh. The contract was between a Minnesota resident and a business foreign to Wisconsin. The contract was sold and premiums were paid in Minnesota. The contract made a future lawsuit to defend Marsh in Wisconsin a foreseeable, and highly likely, event. However, an agreement to defend Marsh in Wisconsin does not imply an agreement to be sued by him in Wisconsin. The insurance contract does not evince a purposeful

availment of the benefits of doing business in Wisconsin. The contract fails to support personal jurisdiction.

Next, Farm Bureau's failure to assist Marsh in recovering his property damage is not equivalent to doing business in Wisconsin. Farm Bureau had no contractual obligation to help Marsh recover his property damage. His decision to pursue a lawsuit was a unilateral activity that cannot be the basis for Farm Bureau's contacts with this state. *See Hanson*, 357 U.S. at 253.

Nor is Farm Bureau's pursuit of its subrogation claim purposeful availment of the laws and benefits of Wisconsin laws. Farm Bureau's contract with Marsh gave it the right to subrogate Marsh's recovery for benefits paid for bodily injury. Furthermore, Minnesota law gives an insurer the right to subrogate its insured's recovery for injuries resulting from out-of-state accidents. Minn. Stat. § 65B.53(2) and (3) (1993). Farm Bureau's subrogation opportunity was based on a Minnesota contract enforceable under Minnesota law. The fact an accident occurring outside Minnesota triggered Farm Bureau's right to seek subrogation does not suggest Farm Bureau availed itself of the laws and benefits of Wisconsin.

Finally, the alleged threats and failure to defend Marsh in Wisconsin are not sufficient contacts to warrant jurisdiction. While these acts occurred in Wisconsin, they should not be characterized as doing business in Wisconsin; Farm Bureau did not purposefully avail itself of the laws and benefits of our state, but rather came here to protect its rights as guaranteed by a Minnesota contract and Minnesota law. Finding that these slim contacts comport with due pro-

cess might open our courts to countless lawsuits by nonresident insureds upset by their insurer's handling of their lawsuit and who wish to avail themselves of the benefits of Wisconsin's laws for breach of contract. We think a greater presence than was presented here is required to constitute minimum contacts. We therefore conclude Farm Bureau did not have the requisite contacts with our state sufficient to support the court's exercise of personal jurisdiction over Farm Bureau.

We also conclude that the exercise of personal jurisdiction would not be consistent with traditional notions of fair play and substantial justice implicit in the due process clause. Factors to consider in determining whether jurisdiction is consistent with traditional notions of fair play and substantial justice include (1) the burden on the defendant, (2) the interests of the forum state in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy, and (5) the shared interest of the several states in furthering fundamental substantive social policies. *World-Wide Volkswagen*, 444 U.S. at 292; *Burger King*, 471 U.S. at 477; *Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 113 (1987).

Defending a lawsuit in Wisconsin is more burdensome to Farm Bureau than defending a lawsuit in Minnesota. Farm Bureau does not have offices or employees in Wisconsin, whereas it has both in Minnesota. Presumably, many of the records and employees relevant to this case are at its Minnesota offices. It would be less expensive to Farm Bureau if this action were tried in Minnesota.

Wisconsin has a strong interest in providing its citizens with a forum in insurance disputes. *In re All-Star Ins.*, 110 Wis. 2d at 79, 327 N.W.2d at 651. However, the exercise of personal jurisdiction would not protect the interests of any Wisconsin citizens. This dispute is between a Minnesota resident and an Iowa-based insurance company. The contract was written in Minnesota, according to its laws, and premiums were paid in Minnesota. Wisconsin has only a minimal interest in resolving this dispute. *See Asahi*, 480 U.S. at 114 (California had "considerably diminished" interests in dispute between two nonresidents).

The Marshes had a choice of forums available and could have brought suit in Minnesota, and thus their interest in convenient and effective relief carries less weight than if Wisconsin were the only available forum. *See World-Wide Volkswagen*, 444 U.S. at 292. Convenient and effective relief may be obtained in Minnesota. The fact that the Marshes reside in Minnesota and Farm Bureau maintains offices there suggests that Minnesota is the more convenient forum. Furthermore, the Marshes may sue in Minnesota for breach of contract. This remedy is likely equivalent to the relief available in Wisconsin, for even if we found jurisdiction, the Marshes would be faced with the probable application of Minnesota law in this case.

This claim can be most efficiently resolved in Minnesota. The Marshes reside there, and Farm Bureau has offices there. The contract was written in Minnesota under its laws. A Minnesota court applying Minnesota law to a Minnesota contract could more efficiently resolve this matter than a Wisconsin court

potentially faced with applying Minnesota law. Finally, the remedies provided for breach of contract demonstrate that both states share an interest in providing relief to those injured by contractual breaches. However, Minnesota's failure to recognize the tort of bad faith evinces a different substantive social policy than Wisconsin. Therefore, Wisconsin's exercise of jurisdiction would not further a shared interest in a fundamental substantive social policy but, rather, would only serve to further its own interests. We conclude the exercise of personal jurisdiction would not be consistent with traditional notions of fair play and substantial justice.

In conclusion, we hold that due process prevents Wisconsin's exercise of personal jurisdiction over Farm Bureau. Farm Bureau did not have the minimum contacts required by the due process clause, and the exercise of jurisdiction would be inconsistent with traditional notions of fair play.

*By the Court.*—Judgment reversed.

CANE, P.J. (*concurring in part; dissenting in part*). I would hold that the trial court correctly concluded that it had personal jurisdiction. Here, Farm Bureau issued an automobile liability policy to Marsh that covered travel into Wisconsin and other states. Typically, an automobile liability policy is sued upon where the accident takes place and, therefore, Farm Bureau should reasonably anticipate being haled into court in Wisconsin where the accident occurred. Farm Bureau contracted to not only indemnify Marsh, but also agreed to defend him. Obviously, this defense must occur where Marsh is sued. I would therefore

conclude that the Wisconsin litigation requiring Farm Bureau's presence was not only foreseeable, but was purposefully contracted for by Farm Bureau. *See Farmers Ins. Exch. v. Portage La Prairie Mut. Ins. Co.,* 907 F.2d 911, 913-14 (9th Cir. 1990). Therefore, the trial court properly concluded it has personal jurisdiction over Farm Bureau.

However, I would also conclude that although Wisconsin has personal jurisdiction over Farm Bureau, Minnesota law should have been applied, and not Wisconsin law. Farm Bureau maintains that the trial court erred by submitting the issues of bad faith and punitive damages, because Minnesota law should have been applied and Minnesota law does not provide for "extra-contract damages."[1] Wisconsin recognizes two tests for resolving choice of law disputes. In *Urhammer v. Olson*, 39 Wis. 2d 447, 450, 159 N.W.2d 688, 689 (1968), the supreme court adopted the grouping-of-contacts approach for the resolution of conflicts questions in contract actions. This approach examines the contacts, both quantitatively and qualitatively, each state has with litigation.[2] In *Heath v. Zellmer*, 35 Wis. 2d 578,

---

[1] Under Minnesota law, punitive damages are not recoverable in actions for breach of contract, except in exceptional cases where the breach of contract constitutes or is accompanied by an independent, willful tort. However, damages are recoverable for a breach of a contract that arise naturally from the breach itself and, therefore, the $20,235.70 in attorney's fees would be recoverable, even under Minnesota law. *Pillsbury Co. v. National Union Fire Ins. Co.*, 425 N.W.2d 244, 248 (Minn. App. 1988).

[2] *Urhammer* involved a factual situation similar to the one presented here. The question involved whether State Farm Mutual Automobile Insurance Company was entitled to deny liability based on its family-exclusion clause. Such a clause is prohibited in Wisconsin, but not Minnesota. The court deter-

60

596, 151 N.W.2d 664, 672 (1967), a tort action, the supreme court considered the following factors: Predictability of results; maintenance of interstate and international order; simplification of the judicial task; advancement of the forum's governmental interests; and application of the better rule of law.

Under Wisconsin law, the Marshes' action lies in tort, the tort of bad faith, *Anderson v. Continental Ins. Co.*, 85 Wis. 2d 675, 271 N.W.2d 368 (1978); however, because their action involves breach of contract, both tests must be considered. *See Schlussler v. American Family Mut. Ins. Co.*, 157 Wis. 2d 516, 526-27, 460 N.W.2d 756, 761 (Ct. App. 1990). In applying the grouping-of-contacts approach, I would conclude that more substantial contacts are with Minnesota, than with Wisconsin. The Marshes are domiciled in Minnesota. Farm Bureau is licensed to do business in Minnesota. The insurance contract was executed in Minnesota according to Minnesota law. The only significant contact with Wisconsin is that Farm Bureau allegedly failed to defend a lawsuit here and sought to protect its subrogation interest in the underlying small claims action. However, because the bad faith action is based on breach of contract, which was executed in

mined that Minnesota law applied. The accident occurred in Wisconsin. However, as the supreme court noted, the negotiations over the contract were undertaken in Minnesota; the domicile of the parties is Minnesota; the policy was entered into, issued and delivered in Minnesota; premiums were paid and claims filed in Minnesota and the vehicle involved was licensed and garaged in Minnesota. Therefore, the court reasoned that the more significant contacts were with Minnesota and not Wisconsin.

Minnesota, and the insured is from Minnesota, the more significant contacts reside with Minnesota.[3]

I would conclude that application of the *Heath* test also favors applying Minnesota law. The Marshes contend that because Farm Bureau knew of the accident, and failed to defend in Wisconsin, Farm Bureau should have known that its tortious conduct would subject them to Wisconsin law. I disagree. The insurance contract was written in accordance with Minnesota law and was between a Minnesota resident and an insurance company that does business in Minnesota. Therefore, both parties should have expected Minnesota law to apply to disputes concerning the contract. Therefore, predictability would be fostered by applying the law under which the contract was negotiated and not the law where the act of failing to defend happened to have occurred.[4]

The next factor to consider is the maintenance of interstate and international order. This means that no state should impose its law in a situation when its parochial rules would unduly and without substantial reason impinge upon another state. *Id.* at 596, 151 N.W.2d at 672. Here, Wisconsin has very little interest

---

[3] The Marshes contend that Farm Bureau had significant contacts with Wisconsin because they knew that the accident occurred in Wisconsin and wrote the insurance contract after the event. However, the contract was executed in Minnesota and not Wisconsin, so therefore, I do not think that mere knowledge of the accident constituted a contact.

[4] In *Heath*, the court stated that predictability is essential in the law of contracts, but has little or no relevancy to an automobile accident or other tort that was never intended or planned. Because the Marshes' action involves a breach of contract, I would consider this factor, even though their action sounded in tort.

in the outcome of the litigation. The dispute is between Minnesota residents and their insurance company and, therefore, Wisconsin law should not be applied.

Simplicity is a factor that I feel should not be weighed very heavily: As stated in *Heath*, a simple and easily applied rule of substantive or procedural law is to be preferred, but simplicity may well be outweighed by other considerations. *Id.* at 597, 151 N.W.2d at 672. The Marshes contend that it is easier for Wisconsin courts to apply their own law, however, Minnesota law is easier to apply because the court does not need to address punitive and bad faith issues.

The next factor to consider is whether application of the forum law will advance the governmental interest of the forum state. This is considered a major, although not a determinative factor. *Id.* at 598, 151 N.W.2d at 673. The Marshes contend that Wisconsin has a vital interest in protecting its litigants from the outrageous conduct exhibited by Farm Bureau. However, the litigant in this case is a Minnesota resident, and the insurance contract in question was executed in Minnesota. Again, Wisconsin has minimal interest in this action.

Finally, in considering the last factor, Wisconsin has the better rule of law. By allowing punitive damages and bad faith compensatory damages, Wisconsin law deters insurance companies from acting in bad faith and protects its residents from such outrageous behavior. However, because four out of the five factors favor applying Minnesota law, I would conclude that application of the *Heath* test also supports employment of Minnesota law.[5]

---

[5] In *Schlussler*, we considered a factual situation analogous to the one presented here. The Schlusslers filed an action alleging a breach of contract because American Family had

Under this previous analysis where I conclude Minnesota law should be applied, there remains the issue of Farm Bureau's breaching its contract to defend Marsh. Farm Bureau contends that the trial court erred by granting summary judgment in favor of the Marshes, finding that Farm Bureau had breached its contract by failing to defend. Farm Bureau maintains that it remained unaware of the counterclaim until eight months after the counterclaim had been filed, when Horace Mann, Marjorie Breuer's insurance company, informed them. At that time, Paul Marsh was already represented by Terrence Gherty. Furthermore, Farm Bureau suggests that it did not breach its duty to defend because Marsh never tendered the defense to them and because it would be redundant to defend Marsh after he was already being defended by Gherty.

The Marshes, however, maintain that Paul Marsh, before he had obtained counsel, called Bruce Flatmoe, Farm Bureau's agent, and informed him of the counterclaim. Furthermore, Paul Marsh contends that he tendered the defense in February 1988. The trial was held in February of 1990. As support for their proposition that Marsh tendered the defense, they reference Marsh's testimony at trial when he stated that he

---

wrongfully denied them medical coverage. American Family contended that Minnesota law should apply because the contract was written in accordance with Minnesota's No-Fault Act. We stated that Minnesota had only minimal contact with the litigation as the site where the accident occurred. We noted that the insurance contract was written in Wisconsin, medical treatments were received in Wisconsin, payments for the medical expenses were received in Wisconsin and the breach of the obligation to make payment occurred in Wisconsin. Therefore, Wisconsin law applied. *Id.* at 527, 460 N.W.2d at 761.

called Flatmoe immediately after learning of the counterclaim.

Obviously there are factual disputes; however, the Marshes correctly contend that they are irrelevant because it is undisputed that Farm Bureau did learn of the counterclaim prior to trial when Farm Bureau was contacted by Horace Mann. Therefore, I would conclude that there are no material facts in dispute and summary judgment was properly granted on this issue. *See* sec. 802.08(2), Stats.

Next, Farm Bureau contends that the trial court erred by allowing attorney's fees because Marsh was being represented on a contingent fee basis, and therefore incurred no fees or costs. The general rule is that "where an insurance contract is intended to relieve the insured of the financial burden of litigation, the insured will not be required to pay the litigation costs of forcing the insurer to assume that burden." *Economy Fire & Cas. Co. v. Iverson*, 445 N.W.2d 824, 827 (Minn. 1989). Here, the insured suffered no financial burden. However, it is unfair to relieve Farm Bureau of the costs merely because Marsh's attorney decided to defend the counterclaim as part of his representation of Marsh. Consequently, I would conclude Farm Bureau is responsible to pay the litigation costs for defending Marsh.

Finally, Farm Bureau contends that the Marshes should not have been awarded $20,235.70 in attorney's fees and costs because no evidence was presented as to what fees were incurred specifically in defending the counterclaim as opposed to pursuing the personal injury claim. However, a paralegal testified that most of the attorney's fees that were incurred, $16,826.25,[6]

---

[6] Costs and disbursements were $3,409.45.

■■■■■■■■■■■■

■■■■■■■■■■■■■■

related to the counterclaim, because both the counter-claim and the personal injury claim had to be pursued together. There was no evidence presented contesting this assertion, and there is credible evidence to support the jury's award.

Therefore, I would conclude Wisconsin had personal jurisdiction over Farm Bureau, but Minnesota law applies barring punitive damages under these facts and an action for bad faith. I would affirm the award of attorney's fees.