**James J. FEDERICO, Jr.**

v.

**CAPITAL GAMING INTERNATIONAL, INC. and Narragansett Tribe of Indians.**

**Civ. A. No. 95–0248P.**

United States District Court, D. Rhode Island.

June 20, 1995.

Dennis J. Roberts, II, Roberts, Carroll, Feldstein & Peirce, Inc., Providence, RI, for plaintiff.

Arlene M. Violet, Arlene Violet & Law Assoc., East Providence, RI, for defendants.

### MEMORANDUM AND ORDER

PETTINE, Senior District Judge.

The Defendant Narragansett Tribe of Indians (the "Tribe") moves to dismiss the action filed against it on the grounds that the Tribe has sovereign immunity from suit.

### I.

The plaintiff alleges that defendants agreed to pay plaintiff fifty thousand ($50,-000.00) dollars for legislative lobbying services to be performed during the year 1994. The parties allegedly set a payment schedule whereby defendants would pay four thousand one hundred sixty-six and 67/100 dollars ($4,166.67) each month. According to the plaintiff, the defendants failed to make payments in November and December. Plaintiff therefore demands judgment in the amount of eight thousand three hundred thirty-three

and 34/100 dollars ($8,333.34), plus interest, costs, and reasonable attorneys' fees.

### II.

As noted in *Davids v. Coyhis,* "[o]ur judicial system has long and consistently recognized Indian tribes as 'distinct, independent political communities' that 'retain[ ] their original natural rights' to exercise self-government." 869 F.Supp. 1401, 1405 (E.D.Wis.1994) (citing *Santa Clara Pueblo v. Martinez,* 436 U.S. 49, 55, 98 S.Ct. 1670, 1675, 56 L.Ed.2d 106 (1978) (additional citations omitted)). Although their powers of self-government have been limited in some respects, "the tribes remain independent, self-governing political entities." *Davids,* 869 F.Supp. at 1406 (citation omitted).

One aspect of this power of self-government is that "[f]ederally recognized Indian tribes enjoy sovereign immunity from suit." *Pit River Home and Agric. Co-op Ass'n v. United States,* 30 F.3d 1088, 1100 (9th Cir.1994). The First Circuit has firmly established that the Narragansett Indian Tribe has been federally recognized as a tribe that enjoys "a government-to-government relationship to the United States." *Maynard v. Narragansett Indian Tribe,* 984 F.2d 14, 16 n. 3 (1st Cir.1993). The Tribe, therefore, possesses "the common-law immunity from suit traditionally enjoyed by sovereign powers." *Maynard,* 984 F.2d at 15 (quoting *Santa Clara Pueblo,* 436 U.S. at 58, 98 S.Ct. at 1677 (additional citations omitted)).

It is well-settled that a tribe may waive sovereign immunity or may have its sovereign immunity abrogated by Congress, but any such relinquishment "cannot be implied but must be unequivocally expressed." *Maynard,* 984 F.2d at 15 (quoting *United States v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 953–54, 47 L.Ed.2d 114 (1976) (additional citations omitted)).

### III.

In his Objection to the Motion to Dismiss, the plaintiff argues that tribal sovereign immunity does not apply in this case because "the facts in the present case do not relate to

356

the rights of Defendant to manage its own property." Plaintiff stresses that he "was retained by Defendants to assist them in achieving qualifying status to conduct Class III gaming operations on tribal lands." Pl.'s Mem. in Support of his Objection to Def., Narragansett Tribe of Indians' Mot. to Dismiss at 2. Plaintiff argues that the Tribe waived its immunity by retaining "a citizen of the State," an active lobbyist, to assist the tribe in achieving qualifying status, pursuant to the Gaming Act, "to conduct Class III Gaming." Pl.'s Mem. in Support of his Objection to Def., Narragansett Tribe of Indians' Mot. to Dismiss at 3–4. Plaintiff reasons that immunity must have been waived because "[t]o permit the Tribe to walk away from a contract for the provision of legislative services within the State of Rhode Island would be equivalent to allowing the Tribe to abrogate unilaterally a contract by a Rhode Island vendor for the delivery of any type of goods or service to the Tribe, totally unrelated to the conduct of Tribal affairs or the management of Tribal land." Pl.'s Mem. in Support of his Objection to Def., Narragansett Tribe of Indians' Mot. to Dismiss at 4.

Thus, plaintiff asserts, explicitly or implicitly, five lines of reasoning: (1) the power of self-government retained by the Tribe does not encompass sovereign immunity from a suit for breach of contract because a lack of such immunity will not affect the Tribe's ability to govern its own peoples and territories; (2) the Tribe engaged in commercial activity with a non-Indian citizen of the United States and thereby waived immunity; (3) the contract indirectly concerned the IGRA and Class III Gaming and therefore constitutes a waiver of immunity; (4) the Tribe should not be immune from suit because immunity from suit in United States courts would mean that the Tribe could breach contracts with impunity; (5) tribal sovereign immunity is not fair to the plaintiff who allegedly rendered services for which he was not compensated.

■ Plaintiff's first argument, that sovereign immunity in this case does not relate to the right of the Tribe to manage its own property, is illogical. Subjecting a sovereign entity to suit without its consent necessarily interferes with the sovereign's ability to manage its own affairs and maintain control over its public funds, territories, and peoples. As the Supreme Court has observed, a tribe's immunity from suit "is a necessary corollary to Indian sovereignty and self-governance." *Three Affiliated Tribes v. Wold Engineering,* 476 U.S. 877, 890, 106 S.Ct. 2305, 2313, 90 L.Ed.2d 881 (1986). The Tenth Circuit has recognized that "the point of sovereign immunity [from suit] is the power of self-determination." *Sac and Fox Nation v. Hanson,* 47 F.3d 1061, 1064 (10th Cir.1995).

■ Contrary to plaintiff's second argument, "a waiver of sovereign immunity cannot be inferred from [an Indian] Nation's engagement in commercial activity." *Sac and Fox Nation,* 47 F.3d at 1063 (finding that tribe was immune from suit in state court although suit resulted from commercial activity engaged in by the tribe outside of the nation's reservation). *See also Davids,* 869 F.Supp. at 1408 (although plaintiffs argue that tribes waive immunity with regard to compliance with the IGRA's provisions by engaging in gaming regulated by the IGRA, court is constrained by "Supreme Court precedent ... from finding an unequivocal expression of a waiver of tribal sovereign immunity through inference from a tribe's actions"); *Oklahoma Tax Comm'n v. Citizen Band Potawatomi Indian Tribe of Ok.,* 498 U.S. 505, 509, 111 S.Ct. 905, 909, 112 L.Ed.2d 1112 (1991) (although tribe consents to court's jurisdiction over claims brought by it, that consent does not waive sovereign immunity for counterclaims brought against it); *Maynard,* 984 F.2d at 16 (declining to evaluate several factors to infer a tribe's waiver of sovereign immunity); *Pan Am. Co. v. Sycuan Band of Mission Indians,* 884 F.2d 416, 418 (9th Cir.1989) (finding that where Congress has not specifically abrogated tribal immunity from suit, only tribal consent "gives the courts the jurisdictional authority to adjudicate claims raised by or against tribal defendants"); *American Indian Agric. Credit Consortium v. Standing Rock Sioux Tribe,* 780 F.2d 1374, 1378–79 (8th Cir.1985) (holding that a tribe's sovereign immunity cannot be waived by implication in contract actions); *Seminole Tribe v. Houghtaling,* 589

So.2d 1030, 1032 (Fla.App.1991) (holding that a tribe was "immune from suit despite its involvement in a commercial enterprise"), *aff'd*, 611 So.2d 1235 (Fla.1993).

■ The plaintiff's third argument, that plaintiff was retained by the Tribe to assist it in gaining the right to conduct Class III gaming operations on tribal lands pursuant to the Indian Gaming Regulatory Act (IGRA), 25 U.S.C. §§ 2701–21, is not relevant to the issue of sovereign immunity from suit. The plaintiff notes that the contract in issue was entered into by the parties "for the specific purpose of qualifying the Tribe to operate Class III gaming on its property...." Pl.'s Objection to Def., Narragansett Tribe of Indians' Mot. to Dismiss at 3. However, it is quite clear that the IGRA cannot possibly be construed as waiving sovereign immunity from suit in a breach of contract action. Even the courts that have found a waiver of immunity to suit in the IGRA have narrowly limited that waiver. *See, e.g., Maxam v. Lower Sioux Indian Community,* 829 F.Supp. 277, 281 (D.Minn. 1993) (holding that "when an Indian tribe engages in gaming governed by the IGRA, it waives its immunity to suit *for the narrow purpose of determining compliance with the requirements of the Act* ") (emphasis added). *But see Davids,* 869 F.Supp. at 1408–9 (finding that the IGRA does not contain an " 'unequivocally expressed' congressional waiver of tribal sovereign immunity" even as to compliance with the requirements of that Act and concluding that "the Community has not 'effectively waived' its sovereign immunity simply by engaging in the gaming regulated by the IGRA").

■ Contrary to plaintiff's fourth argument, a denial of jurisdiction in United States courts is not *necessarily* the "equivalent [of] allowing the Tribe to abrogate unilaterally a contract; " the plaintiff is free to seek a remedy in a tribal forum, if tribal law provides such a remedy. Pl.'s Objection to Defendant, Narragansett Tribe of Indians' Mot. to Dismiss at 4.

Plaintiff's final argument, that tribal sovereign immunity is somehow unfair to the plaintiff, fails to acknowledge either (1) the rightful sovereign status of Indian nations, or (2) the protections available to a person seeking to deal with a sovereign tribe. It is commonly recognized that "[t]he powers of Indian tribes are, in general, 'inherent powers of a limited sovereignty which has never extinguished.' " F. Cohen, Handbook of Federal Indian Law 122 (1945) (emphasis in original) *quoted in Bottomly v. Passamaquoddy Tribe,* 599 F.2d 1061, 1065 (1st Cir. 1979) (quoting *United States v. Wheeler,* 435 U.S. 313, 322, 98 S.Ct. 1079, 1086, 55 L.Ed.2d 303 (1978)). Thus, the Tribe's sovereign status entitles it to immunity from plaintiff's suit, and plaintiff's complaints of unfairness are not justified. Further, plaintiff is in a particularly poor position to complain of unfairness in light of the fact that he did not even avail himself of the protections that *were* available to him. As was the case in *Maynard,* the plaintiff here "cites no provision or source which even alludes to the concept of tribal sovereign immunity, much less its relinquishment." *Maynard,* 984 F.2d at 16. As was the case in *Sac and Fox,* the complaining party was "free to request a waiver of sovereign immunity" before conducting business with the tribe, but did not do so. *Sac and Fox Nation,* 47 F.3d at 1065. The plaintiff cannot now be heard to complain of unfairness in that, unless a waiver of sovereign immunity is found, the Tribe will be able to "walk away" from its contract.

### IV.

For the reasons stated above, the defendant's Motion to Dismiss is GRANTED.

SO ORDERED.