C & B INVESTMENTS, Plaintiff-Appellant,†

v.

WISCONSIN WINNEBAGO HEALTH DEPARTMENT, and Wisconsin Winnebago Business Committee, Defendants-Respondents.

Court of Appeals

*No. 93–2077. Submitted on briefs June 8, 1994.—Decided November 9, 1995.*

(Also reported in 542 N.W.2d 168.)

†Petition to review denied.

For the plaintiff-appellant the cause was submitted on the brief of *Daniel M. Berkos*, of Mauston.

For the defendants-respondents the cause was submitted on the brief of *Vernle C. Durocher, Jr.* and *Sonja G. Lemmer* of *Dorsey & Whitney* of Minneapolis, Minnesota.

Before Eich, C.J., Gartzke, P.J., and Sundby, J.

SUNDBY, J. C & B Investments (C & B) appeals from an order entered July 14, 1993, granting defendants' motion to dismiss C & B's action on contract for lack of jurisdiction because defendants are entitled to sovereign immunity as agencies of the Wisconsin Winnebago Nation. It is undisputed that defendants Wisconsin Winnebago Business Committee (Committee) and Wisconsin Winnebago Tribal Health Board (Health Board) enjoy sovereign immunity from liability. C & B, however, claims that the Committee and the Health Board waived the Nation's sovereign immunity when the Health Board leased C & B's commercial property. We disagree. We therefore affirm the trial court's order.

## BACKGROUND

On September 24, 1991, the Health Board entered into a commercial property lease with C & B for the use of a Mauston office building. The Health Board occupied the property and made timely rent payments until January 1993, when it vacated the premises, leaving it

107

in a state of disrepair. The Health Board notified C & B on or about March 1 that they were terminating utility service to the rental property.

On March 15, 1993, C & B commenced this action claiming breach of the lease and damage to the rental premises. Respondents moved to dismiss based on "tribal sovereign immunity." The trial court dismissed the action, finding that respondents did have tribal immunity and that nothing in the lease waived that immunity. We reject C & B's argument that the trial court failed to make findings to support its conclusions.

## DECISION

We review *de novo* whether the agencies of the Winnebago Nation waived their sovereign immunity. *See Rosebud Sioux Tribe v. Val-U Constr. Co.*, 50 F.3d 560, 562 (8th Cir.), *cert. denied*, 116 S. Ct. 78 (1995). We decide questions of law without deference to the trial court. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 537, 345 N.W.2d 389, 394 (1984).

It is well settled that Native American tribes possess the common-law immunity from suit traditionally enjoyed by sovereign powers. *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978). A waiver of this immunity cannot be implied but must be unequivocally expressed. *Id.*

The Wisconsin Winnebago Nation is a federally recognized Native American tribe and as such enjoys the sovereign immunity guaranteed it by law. The sovereign immunity of the tribe extends to its business arms. *See Weeks Constr., Inc. v. Oglala Sioux Housing*

*Auth.*, 797 F.2d 668, 670-71 (8th Cir. 1986) (Native American housing authority possessed attributes of sovereign immunity). The Winnebago Business Committee is the governing entity of the Wisconsin Winnebago Nation, chartered under the Constitution of the Nation, and functions as an arm of the tribal government. Accordingly, the Nation's sovereign immunity extends to the Committee. The Health Board also shares the Nation's immunity as an agency which functions as an official arm of the Committee on all health-related matters.

Sovereign immunity is typically waived by a "sue or be sued" clause included in the corporate charter when a tribe organizes a corporate entity. Such a clause constitutes an express waiver. *Rosebud Sioux Tribe v. A & P Steel, Inc.*, 874 F.2d 550, 552 (8th Cir. 1989); *Weeks Constr.*, 797 F.2d at 671; *Duluth Lumber and Plywood Co. v. Delta Dev., Inc.*, 281 N.W.2d 377, 384 (Minn. 1979).

It is undisputed that neither the governing documents of the Committee nor the by-laws of the Health Board contain a sue-or-be-sued provision. The lease agreement does not contain such provision. However, despite the absence of a sue-or-be-sued clause, a tribe can waive sovereignty by other acts. For example, when a tribe commences a lawsuit, it waives its immunity. *Rosebud Sioux Tribe*, 874 F.2d at 552. A tribe waives immunity when it agrees to a non-tribal forum, such as a federal court, to resolve disputes. *United States v. Oregon*, 657 F.2d 1009, 1016 (9th Cir. 1981). The Alaskan supreme court carried this a step further when it found that a tribe may waive immunity by agreeing to arbitration. *Native Village of Eyak v. GC Contractors*, 658 P.2d 756, 758-59 (Alaska 1983). To

the same effect is *Rosebud Sioux Tribe v. Val-U Constr. Co.*, 50 F.3d at 563.

However, a sovereign tribe does not waive its immunity simply because it enters into a binding contract. *See, e.g., Sac and Fox Nation v. Hanson*, 47 F.3d 1061, 1063 (10th Cir.) (waiver of tribal sovereign immunity cannot be implied from a tribe's engagement in commercial activity), *cert. denied*, 116 S. Ct. 57 (1995); *American Indian Agric. Credit Consortium v. Standing Rock Sioux Tribe*, 780 F.2d 1374, 1378-79 (8th Cir. 1985) (tribe's sovereign immunity cannot be waived by implication in contract actions); *Ramey Constr. Co. v. Apache Tribe of Mescalero Reservation*, 673 F.2d 315 (10th Cir. 1982) (attorney's fees clause, loan agreement with a bank, obtaining bonds from a surety, and submitting a certificate stating that the contract documents constitute valid and legally binding obligations did not constitute express waiver).

*Davids v. Coyhis*, 869 F. Supp. 1401 (E.D. Wis. 1994), addresses how far the doctrine of "express" waiver may be extended. *Davids* involved a tribe which allegedly violated the Indian Gaming Regulatory Act (IGRA). The tribe moved to dismiss based on sovereign immunity. The plaintiffs cited to two cases from other jurisdictions in which the court found that by engaging in gaming regulated by IGRA, the tribal community effectively waived its sovereign immunity. *Id.* at 1406. In declining to follow this line of cases, the court reemphasized the rule of *Santa Clara Pueblo* as follows:

> [I]t is still the law of the land that "a waiver of sovereign immunity *'cannot be implied* but must be unequivocally expressed.'" *Santa Clara Pueblo*, 436 U.S. at 58 (quoting *United States v. Testan*, 424

U.S. 392, 399 (1976) (quoting *United States v. King*, 395 U.S. 1, 4 (1969))) (emphasis added). . . . I believe that Supreme Court precedent constrains me from finding an unequivocal expression of a waiver of tribal sovereign immunity through inference from a tribe's actions.

*Davids*, 869 F. Supp. at 1408 (part of citations omitted).

The court thus concluded that the community had not "effectively waived" its sovereign immunity simply by engaging in gaming regulated by IGRA. *Id.* at 1409.

In another case involving a contract dispute, the plaintiff made a fairness argument. *Federico v. Capital Gaming Int'l, Inc.*, 888 F. Supp. 354 (D.R.I. 1995). The plaintiff contracted with a Native American tribe, then sued for damages after the tribe failed to fulfill the terms of the agreement. Among other reasons, plaintiff argued that immunity would mean that the tribe could breach contracts with impunity, and that tribal sovereign immunity is not fair to a plaintiff who has rendered services to the tribe for which the plaintiff has not been compensated. *Id.* at 356. The court rejected plaintiff's arguments.

[P]laintiff is in a particularly poor position to complain of unfairness in light of the fact that he did not even avail himself of the protections that *were* available to him. . . . As was the case in *Sac and Fox*, the complaining party was "free to request a waiver of sovereign immunity" before conducting business with the tribe, but did not do so. *Sac and Fox Nation*, 47 F.3d at 1065. The plaintiff cannot now be heard to complain of unfairness in that, unless a waiver of sovereign immunity is found, the Tribe will be able to "walk away" from its contract.

*Federico*, 888 F. Supp. at 357.

As in the case before us, the plaintiff was "free to seek a remedy in a tribal forum, if tribal law provides such a remedy." *Id.*

■

C & B points to paragraph 16 of the lease agreement, which provides: "The covenants and agreements contained herein shall bind the parties mutually, together with their respective heirs, personal representatives and assigns." C & B argues that this provision is sufficient to create an express waiver of immunity. However, C & B cites no authority that general contract language constitutes an express waiver of immunity. Indeed, we have not found any court which has been willing to extend the meaning of "express waiver" to include general contract language.

■

C & B argues that if we permit tribal agencies to avoid their contractual obligations by interposing sovereign immunity, we allow Native American tribes to unfairly avoid all legal obligations. C & B argues that paragraph 16 of the lease agreement must be interpreted as a waiver of tribal sovereign immunity because, "[to] do otherwise creates an intolerable situation for anyone to operate in good faith with a tribal entity on a level field of play." However, C & B could have required the tribal agencies to expressly waive their immunity; so may others who contract with Native American nations. Our decision goes no further than to require that a surrender of sovereign immunity by a nation must be advertent. This is no different from the rule we apply to the sovereign immunity of states and the United States. *See, e.g., State v. P.G. Miron Constr. Co.*, 181 Wis. 2d 1045, 1052-53, 512 N.W.2d 499, 503 (1994). Therefore, C & B's argument fails.

*By the Court.*—Order affirmed.