Robert J. KOSCIELAK and Mary J. Koscielak, Plaintiffs-Appellants,†

UNITED STATES DEPARTMENT OF HEALTH & HUMAN SERVICES (Medicare Part A), Wisconsin Physicians Service Insurance Corporation (Medicare Part B) and United Healthcare Services, Inc., Subrogated-Plaintiffs,

v.

STOCKBRIDGE-MUNSEE COMMUNITY, d/b/a Pine Hills Golf Course & Supper Club and First Americans Insurance Group, Inc., Defendants-Respondents.

Court of Appeals

*No. 2011AP364. Submitted on briefs January 10, 2012.*
*—Decided February 14, 2012.*

2012 WI App 30

(Also reported in 811 N.W.2d 451.)

† Petition for Review granted 6/13/12.

On behalf of the plaintiffs-appellants, the cause was submitted on the briefs of *Jean J. Brown* of *Jastroch & LaBarge, S.C.*, Waukesha.

On behalf of the defendants-respondents, the cause was submitted on the brief of *Gregory B. Conway* and *Patrick M. Blaney* of *Liebmann, Conway, Olejniczak & Jerry*, S.C., Green Bay.

Before Hoover, P.J., Peterson and Mangerson, JJ.

¶ 1. MANGERSON, J. Robert and Mary Koscielak appeal a judgment dismissing their tort claims against the Stockbridge-Munsee Community (the Tribe), d/b/a Pine Hills Golf Course and Supper Club (Pine Hills), and its insurer, First Americans Insurance Group, Inc. The circuit court concluded tribal immunity barred the Koscielaks' claims. We agree and affirm.

## BACKGROUND

¶ 2. The Stockbridge-Munsee Community is a federally-recognized Indian tribe. In 1993, the Tribe purchased Pine Hills from an unincorporated business. For many years prior, Pine Hills had been owned by a Wisconsin corporation known as Pine Hills Golf Club, Inc., but that corporation was administratively dissolved months before the Tribe's purchase. The Tribe's acquisition did not include any stock.

¶ 3. The Tribe began operating Pine Hills soon after the purchase.[1] Invoking its authority under the Tribe's constitution, the Tribal Council formally chartered Pine Hills as a "subordinate organization and economic enterprise" on April 9, 1996. The charter

---

[1] The Koscielaks challenge the circuit court's finding that no gaming activities were conducted at Pine Hills under the Tribe's gaming compact with the State of Wisconsin. As this fact is immaterial to our decision, we have no need to consider the matter.

provides that Pine Hills is to have no assets beyond those assigned by the Tribal Council, and limits the amount recoverable by creditors to those assets. The Tribe reserved the right to review the actions of the business, and gave Pine Hills very limited authority to exercise certain governmental functions of the Tribe.[2] The Tribal Council retained its authority to approve any waiver of tribal immunity, any contracts for the sale or lease of Tribal property, and any contracts that exceeded the approved Pine Hills budget.

¶ 4. The charter is explicit that Pine Hills is to be clothed with the Tribe's sovereign immunity. Section 1.5 of the charter confers tribal immunity on the business and its employees, while also deeming that nothing in the charter should be read to constitute a waiver of that immunity. Section 1.6 is equally explicit in reserving all inherent sovereign rights of the Tribe "with respect to the existence and activities of [Pine Hills.]"

¶ 5. The Tribe purchased a package insurance policy from First Americans, including commercial general liability coverage, in September 2007. The policy contains no provisions in which the Tribe waived its immunity from suit, nor did the Tribe authorize any endorsement precluding First Americans from raising tribal immunity as an affirmative defense.

¶ 6. On February 22, 2008, Robert Koscielak slipped and fell on ice in the Pine Hills parking lot. Koscielak sustained serious injuries that required hospitalization. He and his wife, Mary Koscielak, filed suit against the Tribe under its business name, Pine Hills,

---

[2] These functions included "policy-making authority for the purposes of operating a safe and productive business, consistent with all applicable laws[,]" and "contract signing authority" subject to extensive limitations.

on June 1, 2010, alleging a variety of tort claims. Pine Hills filed a motion to dismiss that contained exhibits outside the pleadings. Accordingly, the motion was converted to one for summary judgment, which the circuit court granted. The court concluded Pine Hills was a subordinate economic entity of the Tribe such that Pine Hills was entitled to the sovereign immunity conferred upon the Tribe by federal law. Because the Koscielaks' claims against the Tribe were barred, the court determined their claims against First Americans were barred, too. Accordingly, the court dismissed all claims against the Tribe and First Americans.

## DISCUSSION

■

¶ 7. The Koscielaks' principal argument on appeal is that the circuit court erred in applying the doctrine of tribal immunity. "That Indian tribes possess common-law sovereign immunity from suit akin to that enjoyed by other sovereigns is part of this Nation's long-standing tradition." *Ransom v. St. Regis Mohawk Educ. & Cmty. Fund, Inc.*, 658 N.E.2d 989, 992 (N.Y. 1995). Like foreign sovereign immunity, "tribal immunity is a matter of federal law and is not subject to diminution by the States." *Kiowa Tribe of Okla. v. Manufacturing Techs., Inc.*, 523 U.S. 751, 756 (1998). Accordingly, our state courts have repeatedly acknowledged the doctrine, applying it where appropriate to bar suits in state court against tribal sovereigns. *See, e.g., McNally CPA's & Consultants, S.C. v. DJ Hosts, Inc.*, 2004 WI App 221, ¶ 8, 277 Wis. 2d 801, 692 N.W.2d 247; *C & B Invs. v. Wisconsin Winnebago Health Dep't*, 198 Wis. 2d 105, 108, 542 N.W.2d 168 (Ct. App. 1995); *Landreman v. Martin*, 191 Wis. 2d 787, 801, 530 N.W.2d 62 (Ct. App. 1995).

¶ 8. In a state suit against a tribal entity, the doctrine applies unless "Congress has authorized the suit or the tribe has waived its immunity." *Kiowa*, 523 U.S. at 754. The Koscielaks, however, have not pointed to any Congressional action, nor have they argued waiver. Instead, they claim their suit is not against a tribal entity. The Koscielaks assert Pine Hills is not entitled to immunity because its business activities are too attenuated from the Tribe. Whether an Indian tribe's immunity extends to an affiliated commercial entity is a question of law. *McNally*, 277 Wis. 2d 801, ¶ 5.

¶ 9. Generally, a tribe's immunity "extends to its business arms." *C & B Invs.*, 198 Wis. 2d at 108–09 (citing *Weeks Constr., Inc. v. Oglala Sioux Housing Auth.*, 797 F.2d 668, 670–71 (8th Cir. 1986)). In *Weeks*, the Eighth Circuit concluded that a tribal housing authority created by tribal ordinance to develop and administer housing projects was an "arm of tribal government" possessing attributes of tribal sovereignty. *Weeks*, 797 F.2d at 670–71. We similarly concluded in *C & B Investments* that the Winnebago Nation's Business Committee and Health Board were tribal arms entitled to immunity. *C & B Invs.*, 198 Wis. 2d at 108–09.

¶ 10. Immunity is not automatically conferred by a tribe's purchase of a corporation's stock, however. *McNally*, 277 Wis. 2d 801, ¶ 6. In *McNally*, we addressed the "narrow question" of whether "tribal immunity is conferred on a corporation when *all* of the shares of that corporation are purchased by an Indian tribe." *Id.*, ¶ 7 (emphasis added). While acknowledging our holding in *C & B Investments*, we concluded that tribal immunity is not conferred merely by a tribe's purchase of and control

415

over a for-profit corporation. *McNally*, 277 Wis. 2d 801, ¶¶ 7–8.

¶ 11. The Koscielaks urge us to apply a set of factors borrowed by the *McNally* court from foreign cases. In *McNally*, the tribal business relied on cases from California, Minnesota, and New York to support its immunity claim. *Id.*, ¶ 9. We found those cases distinguishable because they all involved corporations that were created by a tribe, and none directly addressed the issue in *McNally*: whether a preexisting creditor of the corporation lost its right to sue once the corporation was purchased by a tribe. *Id.*, ¶¶ 9–11. We concluded our analysis by citing a nonexclusive list of nine factors used by the various foreign courts to determine "whether a tribe-owned corporation was so integrated with the tribe that the policies behind tribal immunity were advanced by treating the corporation as part of the tribe . . . ."[3] *Id.*, ¶ 12.

---

[3] The factors include:

(1) Whether the corporation is organized under the tribe's laws or constitution;

(2) Whether the corporation's purposes are similar to or serve those of the tribal government;

(3) Whether the corporation's governing body is comprised mainly or solely of tribal officials;

(4) Whether the tribe's governing body has the power to dismiss corporate officers;

(5) Whether the corporate entity generates its own revenue;

(6) Whether a suit against the corporation will affect the tribe's fiscal resources;

(7) Whether the corporation has the power to bind or obligate the funds of the tribe;

(8) Whether the corporation was established to enhance the health, education, or welfare of tribe members, a function traditionally shouldered by tribal governments; and

¶ 12. While perhaps relevant to our analysis in *McNally*, the nine factors derived from foreign decisions have virtually no applicability outside the specific facts of that case. As we noted throughout the *McNally* opinion, our rejection of tribal immunity was a "narrow" holding, applicable only when an Indian tribe has purchased "all of the shares of an existing for-profit corporation and [taken] control over the [corporate] operations . . . ." *Id.*, ¶ 18. *McNally* did not purport to abrogate the general rule of immunity outside its specific facts.

¶ 13. Accordingly, the Koscielaks read too much into *McNally*'s nine factors. The factors appear to have been used to distinguish the facts in *McNally* from the facts of the foreign decisions, all of which had concluded that the tribal entity was an arm of the tribe and entitled to immunity. *See Gavle v. Little Six, Inc.*, 555 N.W.2d 284, 296 (Minn. 1996); *Ransom*, 658 N.E.2d at 993; *Trudgeon v. Fantasy Springs Casino*, 84 Cal. Rptr. 2d 65, 71 (Cal. Ct. App. 1999). We declined to engage in an extensive discussion of the nine factors in *McNally*, instead simply concluding, "So far as we can tell from the record, none of the factors . . . appreciably weigh in favor of [immunity]." *McNally*, 277 Wis. 2d 801, ¶ 15.

¶ 14. No Wisconsin case since *McNally* has cited or applied the nine factors. And with good reason; in all but the most clear-cut situations, the test will produce inconclusive results. We are also concerned that some of the *McNally* factors are inconsistent with the Supreme Court's *Kiowa* decision. *See Kiowa*, 523 U.S. at 754–55

(9) Whether the corporation is analogous to a tribal government agency or instead more like a commercial enterprise instituted for the purpose of generating profits for its private owners.

*McNally CPA's & Consultants, S.C. v. DJ Hosts, Inc.*, 2004 WI App 221, ¶ 12, 277 Wis. 2d 801, 692 N.W.2d 247.

417

(no distinction for immunity purposes between governmental and commercial activities of a tribe); *see also Cash Advance & Preferred Cash Loans v. State*, 242 P.3d 1099, 1111 n.12 (Colo. 2010); *Trudgeon*, 84 Cal. Rptr. 2d at 69 (noting problem and assuming, but not deciding, that the purpose for which tribal entity is organized remains a viable consideration).

¶ 15. Because we do not view the *McNally* factors as a controlling test, we instead follow the general rule of immunity for tribal businesses. Tribes must surmount many developmental challenges, including tribal remoteness, lack of a tax base, capital access barriers, and the paternalistic attitudes of federal policymakers. *Cash Advance*, 242 P.3d at 1107. "Because of these barriers . . . tribal economic development—often in the form of tribally owned and controlled businesses—is necessary to generate revenue to support tribal government and services." *Id.* Tribal immunity promotes this economic development, as well as tribal self-determination and cultural autonomy. *McNally*, 277 Wis. 2d 801, ¶ 12.

¶ 16. To be sure, the doctrine's underpinnings have been questioned. In *Kiowa*, the Supreme Court noted the doctrine's accidental development and questioned whether immunity remained necessary to safeguard tribes from encroachment by the states. *Kiowa*, 523 U.S. at 756, 758. The Court also noted that the rule can produce harsh results: "[I]mmunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims."[4] *Id.* at 758; *see also Landreman*, 191 Wis. 2d at 803–04 (noting that unfairness may result from the sovereign

---

[4] The Koscielaks engage in a lengthy discussion of *Kiowa*, asserting that the Supreme Court never intended to render tribal immunity applicable to state tort claims. *Kiowa Tribe of Okla. v.*

immunity of Indian tribes, but declaring that "long-standing policy dictates the promotion of tribal self-government and, consequently, sovereign immunity"). However, declaring tribal immunity "settled law," the Court declined to discard the doctrine, preferring instead to leave the matter for Congress. *Kiowa*, 523 U.S. at 756, 759–60. Congress has not abrogated the Tribe's immunity in this case, nor has the Tribe waived it.

¶ 17. The case for immunity is all the stronger here because it appears the Tribe took measures to extend its immunity to Pine Hills. Section 1.5 of the Pine Hills charter specifically clothes the business and its employees with "all the privileges and immunities of the Tribe . . . including sovereign immunity from suit in any tribal, federal or state court." Any business contracts that waived tribal immunity required approval from the Tribal Council. In light of the general rule that

---

*Manufacturing Techs., Inc.*, 523 U.S. 751 (1998). We note a division of authority on that matter. *Compare Redding Rancheria v. Superior Court*, 105 Cal. Rptr. 2d 773 (Cal. Ct. App. 2001) (immunity applies to tort claims), *Trudgeon v. Fantasy Springs Casino*, 84 Cal. Rptr. 2d 65, 68 (App. 1999) (same), *Sevastian v. Sevastian*, 808 A.2d 1180, 1183 (Conn. App. Ct. 2002) (same), *and Wright v. Colville Tribal Enter. Corp.*, 147 P.3d 1275, 1278 (Wash. 2006) (determining by implication that immunity barred common-law negligence claims), *with D'Lil v. Cher-Ae Heights Indian Cmty. of Trinidad Rancheria*, No. C 01–1638 TEH, 2002 WL 33942761 (N.D. Cal. March 11, 2002) (declaring that *Kiowa* left open the question of immunity for noncontractual activity), *Bittle v. Bahe*, 2008 OK 10, ¶ 30, 192 P.3d 810, 821 (no immunity against tort claims), *and Foxworthy v. Puyallup Tribe of Indians Ass'n*, 169 P.3d 53, 58 (Wash. Ct. App. 2007) (same). Because Wisconsin law has never before distinguished between tort and contract claims for tribal immunity purposes, we decline to draw such a distinction here. That matter is best left to the Wisconsin Supreme Court or the federal courts.

tribal businesses are immune from suit and the Tribe's explicit invocation of that immunity in the Pine Hills charter, we conclude the Koscielaks' claims were properly dismissed.

■■

¶ 18. The Koscielaks counter that applying tribal immunity to bar the tort claims of individuals who are not Tribe members violates art. 1, § 9 of the Wisconsin Constitution. As pertinent here, § 9 provides, "Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character . . . ." However, this provision preserves only those remedies that existed at common law, based on " 'the law as it in fact exists.' " *Aicher v. Wisconsin Patients Comp. Fund*, 2000 WI 98, ¶ 43, 237 Wis. 2d 99, 613 N.W.2d 849 (quoting *Mulder v. Acme-Cleveland Corp.*, 95 Wis. 2d 173, 189, 290 N.W.2d 276 (1980)). At common law, foreign sovereigns were extended "virtually absolute immunity" as "a matter of grace and comity." *Samantar v. Yousuf*, __ U.S. __, 130 S. Ct. 2278, 2284 (2010) (citation omitted).[5] Even assum-

---

[5] "It must always be remembered that the various Indian tribes were once independent and sovereign nations, and that their claim to sovereignty long predates that of our own Government." *McClanahan v. State Tax Comm'n*, 411 U.S. 164, 172 (1973). The Koscielaks note the prevailing trend has been to treat state jurisdictional limitations as a matter of federal preemption rather than inherent sovereignty. *See id.*; *Sanapaw v. Smith*, 113 Wis. 2d 232, 235–36, 335 N.W.2d 425 (Ct. App. 1983). Even so, the Supreme Court has retained tribal immunity as a matter of federal law, subject only to Congressional abrogation or tribal waiver. *Kiowa*, 523 U.S. at 754, 756.

We note that the Koscielaks' preemption argument relies in part on an authored, unpublished case decided by this court in 2011. A party may cite such cases for persuasive value provided

ing § 9 could be construed to authorize the Koscielaks' suit, it has been preempted by federal law. Tribal immunity is a federal matter not subject to abrogation by the states. *See Kiowa*, 523 U.S. at 756.

¶ 19. Lastly, the Koscielaks assert their claims against First Americans survive tribal immunity. They argue that, at the time of Robert Koscielak's injury, the Tribe had asserted in an unrelated federal legal proceeding that Pine Hills was a gaming entity under its gaming compact with the State of Wisconsin. This would have required the Tribe to maintain certain amounts of liability insurance, with the Tribe's insurer waiving its right to invoke tribal immunity as a defense to any claims. *See* Gaming Compact of 1992, Stockbridge-Munsee Community-State of Wis., art. XIX(A.)-(B.), April 15, 1992.[6] The Koscielaks would hold First Americans (which was not a party to the federal litigation) to the Tribe's position that Pine Hills is a gaming entity.

¶ 20. Of the many problems with the Koscielaks' argument, the most glaring is that the Tribe lost in federal court. Pine Hills is not located within the boundary of the Tribe's reservation as it exists today. *Wisconsin v. Stockbridge-Munsee Cmty.*, 554 F.3d 657, 665 (7th Cir. 2009). Accordingly, the Tribe is not permitted to operate slot machines at Pine Hills. *Id.* at 659. The Gaming Compact of 1992 does not apply.

---

that a copy of the opinion is filed and served with, and included as an appendix in, its brief, neither of which the Koscielaks did. *See* Wis. Stat. Rules 809.19(4)(b) and 809.23(3)(c). We admonish counsel that future violations of the Rules of Appellate Procedure may result in sanctions, which includes striking the offending material. *See* Wis. Stat. Rule 809.83(2).

[6] The Gaming Compact of 1992 is available on the Wisconsin Department of Administration's website at http://www.doa.state.wi.us/docview.asp?docid=2173.

¶ 21. The Koscielaks also assert that they may recover against First Americans in a direct action under Wis. Stat. § 632.24 even though their claims against the Tribe are barred.[7] This is not correct. "The fact that a third party can sue an insurer [under the direct action statute] without first recovering a judgment against the insured defendant, does not enlarge the coverage afforded by such policy or determine the insurer's liability thereunder." *Nichols v. United States Fidelity & Guaranty Co.*, 13 Wis. 2d 491, 499, 109 N.W.2d 131 (1961). In other words, an insurer is not liable unless its insured is. *Verhein v. South Bend Lathe, Inc.*, 598 F.2d 1061, 1064 (7th Cir. 1979) (citing *Fagnan v. Great Central Ins. Co.*, 577 F.2d 418, 420 (7th Cir. 1978)); *Wiechmann v. Huber*, 211 Wis. 333, 336, 248 N.W. 112 (1933). Here, the insurance policy obligated First Americans to pay "those sums that the insured becomes legally obligated to pay as damages . . . ." The Tribe is not obligated to pay anything because it is protected by tribal immunity.

*By the Court.*—Judgment affirmed.

---

[7] The Tribe defends against this argument by asserting that under *Kenison v. Wellington Insurance Co.*, 218 Wis. 2d 700, 710, 582 N.W.2d 69 (Ct. App. 1998), Wis. Stat. § 632.24 applies only to insurance policies delivered or issued in Wisconsin, which they contend did not occur here. After briefs in this case were filed, *Kenison* was explicitly overruled by our supreme court. *See Casper v. American Int'l Ins. Co.*, 2011 WI 81, ¶ 80, 336 Wis. 2d 267, 800 N.W.2d 880 (insurance policies need not be issued or delivered in Wisconsin so long as the accident or injury occurs in this state). *Casper* controls the Tribe's argument on this point.

All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.